IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., : : : Plaintiff, : : v. : : : JAMES ANASTASIO, : a/k/a JAMES P. ANASTASIO, : : Defendant. : | CIVIL ACTION NO. 3:CV-04-2691 (JUDGE KOSIK) |

## **MEMORANDUM**

Before the court is the third party purchaser, Brian Stone's (hereinafter "Purchaser") motion for reconsideration (Doc. 21) of our February 3, 2006, order (Doc. 18). In that order we overruled Purchaser's exception to the schedule of distribution (Doc. 14) prepared by the U.S. Marshal Service. For the reasons that follow, we will deny Purchaser's motion for reconsideration and will let stand our February 3, 2006, order overruling Purchaser's exception to the schedule of distribution.

**I.    FACTS**

The controversy before us originates from a December 20, 2005, Marshal's sale of real property located at Route 115 West, Tobyhanna, Pennsylvania. This court issued a writ of execution directing the Marshal to sell the property subsequent to the entry of default judgment in favor of plaintiff, Mortgage Electronic Registration Systems, Inc. (hereinafter "MER" or "plaintiff"), in a mortgage foreclosure action. A

MER attorney attended the Marshal's sale and set the upset price for the property at $545,400.00. The upset price is fixed by the foreclosing creditor and represents the highest bid that the creditor will make at the sale to ensure that it takes possession of the property outright, or that any sale to another party will cover the judgment, interest, and costs associated with the foreclosure. Any potential purchaser must bid one dollar over the upset price in order to buy the property.

Prior to the sale, Purchaser, spoke with MER attorney, Kevin Kane, regarding the upset price of the property. In a declaration filed on February 21, 2006, Purchaser recounted that prior to the date of the sale, Mr. Kane told him that the judgment awarded in the MER's favor by this court was roughly $476,000, and that the amount owed MER as of October, 2005, was roughly $514,943.73. (Doc. 21). Purchaser alleged that Mr. Kane notified him that the upset price would include the Marshal's fee, any tax lien and other costs. On the day of the sale, December 20, 2005, Mr. Kane told Purchaser that the upset price was $545,400. Purchaser's declaration states that he "anticipated that [the stated price] included the transfer tax, Marshal's fees, and all other expenses that would be needed to be paid to file the deed and to obtain good title to the property." (Doc. 21 at ¶ 3).

Andrea Lavelle of the U.S. Marshal Service explained the procedure followed in this sale at a hearing on May 11, 2006. Ms. Lavelle recounted that she received the writ of execution from this court and scheduled the sale for December 20, 2005. *See* 5/11/06 Hearing Transcript at 7. She typed a notice of sale and provided it to MER's counsel. Ms. Lavelle advertised the sale in the local newspaper, the Pocono Record. *Id*. at 18. The public notice indicated that, "all stamps and transfer taxes

2

shall be the responsibility of the purchaser." *See* Public Notice, attached to Doc. 25 as Ex. D. She directed Deputy Marshals to post the property prior to the sale. *See* 5/11/06 hearing Transcript at 7. A Deputy Marshal then went to the Monroe County courthouse to manage sales scheduled for that day. The Deputy Marshal accepted Purchaser's down payment on the winning bid on the property.

On January 4, 2006, MER submitted an assessment of its claim to the Marshal Service. (Doc. 36, Exhibit). MER represented that it was owed $633,650.84, an increase of more than $90,000 over the upset price MER had provided Purchaser, and more than $100,000 over the award and interest actually payable to MER. The Marshal contacted MER's counsel to question the assessment and the latter provided a corrected claim of $520,653.01. On January 10, 2006, the Marshal filed a schedule of distribution. (Doc. 12). The schedule listed Purchaser's bid of $545,401.00, the amount of the down payment, attorney costs, and the sums to be paid to the lien holders and the U.S. Marshal Service. An amount of $520,653.01 was to be distributed to MER. Among the remaining distributions was a payment of $15,023.44 to a junior mortgagee, Countrywide Home Loan, Inc. (hereinafter "Countrywide"). No distributions were made for a transfer or property tax. *Id.*

Purchaser filed an "Exception to Schedule of Distribution" on January 13, 2006.[1] (Doc. 14). In his exception, Purchaser alleged that Countrywide had not

---

[1] Purchasers' exception was time stamped by the Clerk of Court on January 13, 2006. It appears on the docket on January 24, 2006.

appeared in the action. Purchaser further argued that he had agreed to pay $1 over the amount owed to MER, and that MER represented to Purchaser that it was owed $545,400.00. *Id.* Purchaser asserted that MER was actually owed $15,023.44 less than it had claimed. *Id.* Purchaser asked that the schedule of distribution be altered to reflect a purchase price of $530,377.56, and that no distribution be made to the junior mortgagee, Countrywide. *Id.*

On February 3, 2006, we entered an order overruling Purchaser's exception to schedule of distribution. (Doc. 19). At the time, we read Purchaser's exception as a challenge to the right of Countrywide to receive funds from the proceeds of the sale. Only after entering the order and receiving a letter from Purchaser did this court comprehend the nature of Purchaser's challenge, that the amount of the transfer tax should have been taken from his winning bid. On February 9, 2006, we wrote to all counsel explaining the confusion and asking that they meet in an attempt to settle the dispute. (Doc. 20).

Purchaser filed a motion for reconsideration on February 21, 2006. (Doc. 21). In his memorandum of law in support thereof, Purchaser argues that the bid of $545,401.00 included a sum of $15,023.44 in costs and fees that MER thought that the "Marshal would pay to submit the deed for filing, satisfy a tax lien and to otherwise meet the expenses of the sale and give good title . . .." (Doc. 24 at 1). He further contends that he relied upon statements made by MER's attorney that the upset price would include those various costs. *Id.* Purchaser concludes that it would be unconscionable for the him to pay those costs, only to have those funds

4

diverted from the intended recipients and paid to a junior lien holder. *Id.*

After Purchaser filed his motion for reconsideration, we filed a rule to show cause why the motion should not be granted and scheduled a hearing on the matter. (Docs. 23 and 30). At the May 11, 2006, hearing, Purchaser testified that his conversations with MER's counsel leading up to the sale left him with the impression that the upset price included all fees and taxes required to take possession of the property. Purchaser admitted that he did not recall MER's attorney specifically stating that the upset price included the transfer tax. *See* 5/11/06 Hearing Transcript at 35. Purchaser acknowledged that the public notice published in the Pocono Record stated that all transfer taxes shall be the responsibility of the purchaser. *Id.* Purchaser additionally conceded that he did not rely upon MER's attorney's representations when bidding on the property. *Id.* at 37. Specifically, Purchaser testified:

> In my conversation with [MER's attorney] he indicated – two occasions that we spoke about it – that all costs, fees, liens, whatever was necessary to have clean title would be included in the upset price. And to me, that was – I took him at his word, although I don't say I truly, truly relied upon him, but I took him at his word, and that was all inclusive. He did not say to me all costs and fees except for this or for that, he said all costs and fees and liens would be included. And he did mention taxes.

*Id.* Subsequent to the hearing, this court invited the parties to file letter briefs further addressing the issue. All parties have submitted letter briefs. (Docs. 33, 34, and 36).

MER acknowledges that it "anticipated" that the Marshal would have to pay

5

a transfer tax of roughly $9,500 and would deduct a fee of roughly $9,500.  (Doc. 17).  The plaintiff further anticipated that the sheriff would purchase a distribution insurance policy in the amount of approximately $2,300.00, and that the sheriff's costs would be roughly $1,300.00.  The plaintiff admits that it, "was informed that there were taxes due, which it estimated to be approximately $1,800.00, in which may have been paid out of the proceeds of the sale."  *Id.*  MER appears to have based these erroneous assumptions on Pennsylvania law governing state sheriff's sales.  MER claims that it's belief that it was responsible for the above fees and taxes was, "sufficient legal basis for the calculation of its upset price."  *Id.*  The plaintiff recently reiterated these arguments in its May 16, 2006, letter brief in response to the purchaser's motion for reconsideration.  (Doc. 34).  In the brief, MER contends that it included sheriff's fees and other state fees and taxes in the upset price because it could not be expected to predict with 100% accuracy the exact items the sheriff or Marshal would have to pay from the bid price.  *Id.* at 2.  MER has not acknowledged, however, that any of its representatives told Purchaser that the transfer tax would be paid from the proceeds of the sale, or that the upset price included the amount of the transfer tax.  No representatives of MER testified at the May 11, 2006, hearing.

**II.    DISCUSSION**

    **A.    Motion For Reconsideration**

A motion for reconsideration is a device of limited utility.  It may be used only to correct manifest errors of law or fact, or to present newly discovered precedent

or evidence which, if discovered previously, might have affected the court's decision. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985). It has also been held that a motion for reconsideration is appropriate in instances where the court has "misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Rohrbach v. AT&T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995), *vacated in part on other grounds*, 915 F. Supp. 712 (M.D. Pa. 1996). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus. Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

As we noted in our February 9, 2006, correspondence to all counsel, this court was initially under the impression that Purchaser's exception to the distribution challenged the right of the junior mortgagee, Countrywide, to receive funds from the proceeds of the sale. (Doc. 20). Subsequent to our February 3, 2006, order overruling Purchaser's exception, we learned that the exception included allegations of erroneous representations made by MER's attorney. As our order overruling Purchaser's exception was made under a misapprehension of Purchaser's challenge, we will reconsider the exceptions at this time. *See Rohrbach*, 902 F. Supp. at 527 (holding motion for reconsideration appropriate where court has "misunderstood a party, or . . . has made an error not of reasoning, but of apprehension"). Accordingly, we will proceed with a substantive review of Purchaser's exception.

### B.      Purchaser's Exception To Distribution

Purchaser requests that this court mold the schedule of distribution prepared by the Marshal so that his bid reflects the actual amount of MER's judgment with associated interest and costs. In its various briefs, MER argues that Purchaser has failed to cite any statute or case law authorizing this court to amend the schedule of distribution. It further claims that under Pennsylvania law, the maxim of *caveat emptor* applies to preclude any challenge by the winning bidder at a judicial sale. Countrywide, the junior lien holder, similarly responded to Purchaser's exception to the schedule of distribution. Countrywide echoes that *caveat emptor* applies in this instance to strip Purchaser of any remedies. Countrywide additionally posits that because Purchaser was not a lien holder on the date of the sale, he has no standing to seek a modification of the schedule of distribution. MER and Countrywide err in their assertion that *caveat emptor* precludes any remedy in this case. A review of the applicable Pennsylvania law, however, supports Countrywide's conclusion that Purchaser may not challenge the schedule of distribution.

### 1. Pennsylvania Law Applies To Purchaser's Petition

MER and Countrywide correctly note that Pennsylvania law, both procedural and substantive, governing judicial sales is controlling in this matter. The Federal Rules provide that proceedings in aid of execution are to be in accordance with the practice and procedure of the state in which the district lies. Specifically, Fed.R.Civ.P. 39 states:

> a) In General.  Process to enforce a judgment for the payment of money shall be a writ of execution, unless

8

> the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution **shall be in accordance with the practice and procedure of the state in which the district court is held**, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

In this instance, we will apply the procedural and substantive law of Pennsylvania in ruling upon Purchaser's exception to the schedule of distribution.

### 2. Pennsylvania Cases Interpreting Court's Power To Upset Or Alter Judicial Sale

Under Fed.R.Civ.P. 39, we look to the Pennsylvania Rules and state court precedent to determine the Commonwealth's willingness to vacate or alter judicial sales. The Pennsylvania Rules of Civil Procedure invest the state courts with significant discretion to set aside or otherwise alter a sale of real property in execution of a judgment. Pa.R.Civ.P. 3132 provides that, "[u]pon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." There is a paucity of case law applying the equitable powers codified in the Rules of Civil Procedure. Most of the published opinions concern judicial sales during which one party made a unilateral mistake of law that affected

the ownership of, or encumbrances upon, the subject property.

A recent case concerning a unilateral mistake of law was cited by MER in it's response to Purchaser's motion for reconsideration. MER cited to *National Penn Bank F/K/A/ v. Shaffer*, 672 A.2d 326 (Pa.Super. 1996), in support of its argument that the maxim of *caveat emptor* applies to preclude this court from altering the Marshal's sale or schedule of distribution. *Shaffer* involved a sheriff's sale in execution of a judgment in favor of a second mortgagee, National Penn Bank (NFB). The plaintiff, NFB, retained counsel to attend the sheriff's sale and bid on the property. The plaintiff's bid was successful. *Id.* at 327-28. Counsel for NFB included the amount of a first mortgage in calculating the winning bid. Only after the sale did NFB learn that Pennsylvania law provided that the superior mortgage was not settled in the judicial sale in execution of a judgment in favor of a junior mortgagee. Rather, the property was purchased with the first mortgage intact. *Id.* at n.3. NFB had made a unilateral mistake of law in bidding an amount that exceeded the amount necessary to protect its own interest and purchasing the property subject to a first mortgage.

NFB subsequently filed a petition to set aside the sheriff's sale based upon its own misunderstanding of the applicable law. *Shaffer*, 672 A.2d at 328. NFB claimed that if the sale were upheld, it would wind up paying double the amount due on the first mortgage in order to own the property free of any liens. The trial court granted NFB's petition and ordered a resale of the subject property. *Id.* The defendants, including the former owners/mortgagors who presumably stood to

10

receive sale proceeds as a result of NFB's excessive bid, appealed the decision to the Superior Court. The Superior Court reversed and ordered that the proceeds from the sale be distributed. The Superior Court noted that Pennsylvania law regarding the affect of a sheriff's sale on prior mortgages was unambiguous and well-settled. *Id.* at 329. The court pointed out that NFB was a "sophisticated financial lender" represented by counsel. *Id.* at 330. The court discerned no equitable considerations that would support granting relief to NFB. The Superior Court held that no relief could be granted, "where the parties cannot be restored to their original position or where there is a mistake of law, pure and simple, without any circumstances or equitable considerations which would move a chancellor to grant relief." *Id.* (citing *First Nat'l Bank v. Rockefeller*, 333 Pa. 553 (Pa. 1939)).

The *Rockefeller* opinion cited in *Shaffer* did not involve a judicial sale of property. Nonetheless, the opinion provides a lengthy analysis of Pennsylvania's approach to exercising equitable powers to disturb real estate sales. In *Rockefeller*, the plaintiff/mortgagee bank purchased the property securing a debt at a private sale arranged by the debtor's widow and her attorney. *Id.* at 555. The widow notified the plaintiff and other creditors that the property would be sold subject to the liens of the first and second mortgages, both held by the plaintiff. *Id.* The plaintiff alleged that the widow's attorney erroneously represented that the sale would operate in law as to discharge all liens subsequent to the plaintiff's two mortgage liens. *Id.* After buying the property, the plaintiff mistakenly recorded both mortgages as satisfied. *Id.* Two years subsequent, while attempting to resell the property, the plaintiff

11

learned that the law did not act to discharge the liens. *Id.* The bank filed suit and the trial court ruled that the satisfactions be stricken from the record, and that the two mortgages be reinstated. *Id.*

In upholding the trial court's decision, the Pennsylvania Supreme Court noted the general rule that one party's mistake regarding the application of law does not entitle that party to equitable relief. *Rockefeller*, 333 Pa. at 557. The opinion proceeded with a review of cases employing the general rule and surmised that subsequent to a mistake of law, equitable relief has been refused: "(a) where money has been paid under a mistake of law; (b) where a contract has been fairly made with full knowledge of the facts, even though a party thereto may have been under a misapprehension concerning its legal effect; (c) where the parties cannot be restored to their original position; (d) where an innocent third party will be injured if correction of the mistake be decreed; (e) where there has been unreasonable delay in seeking relief; (f) where there is a mistake of law, pure and simple, without any circumstances or equitable considerations which would move a chancellor to grant relief." *Id.* at 559. The *Rockefeller* court ordered that the mortgages be reinstated as the debtor's widow should not be unjustly enriched by the plaintiff's mistake and because the rights of third parties were not involved. *Id.* The Pennsylvania Supreme Court additionally noted that it had been the initial intention of the debtor's widow that the property be sold subject to the mortgages and, therefore, reinstating the mortgages would restore the parties to their original positions. *Id.*

*First National Bank v. Mount*, 1 A.2d 547 (Pa.Super.1938), was also cited in

*Shaffer*. *Mount* provides an example of when equitable powers have been used to upset judicial sales. In distinguishing it's holding from *Mount*, the *Shaffer* opinion described the former case only as, "involving a situation in which the purchaser's mistake was clearly induced by the conduct of the execution creditor's counsel." *Id.* (citing *Mount*, 1 A.2d at 550). Like the present matter, *Mount* concerned allegations of misconduct on the part of the judgment creditor. The plaintiff in *Mount* received a judgment against the debtor and issued a writ of execution to the sheriff to sell land consisting of several lots and buildings. *Mount*, 1 A.2d at 548. The county was owed taxes on the property to be sold. As was it's practice, the county appointed a representative, the deputy treasurer, to attend the sale and bid a sum sufficient to cover the delinquent taxes. On the date of the sale, an attorney for the judgment creditor attempted to convince the deputy treasurer not to bid on the land. *Id.* at 549. Having failed to dissuade the deputy treasurer, the attorney succeeded in removing some lots from the sale and adding others, in an attempt to confuse the county representative. *Id.* After an adjournment agreed to by the creditor's attorney and the county representative, the creditor's attorney once again cancelled the revised order and asked the sheriff to sell another set of parcels. *Id.* The sheriff denied the county representative's request for another adjournment and proceeded to sell the lots. The deputy treasurer was unable to correctly calculate the taxes due on the selected lots and bid the sum of the total taxes owed. *Id.*

Subsequent to the sale, the county discovered that the amount bid was considerably more than the taxes owed on the particular lots. *Mount*, 1 A.2d at 549.

The county refused to make good on their bid and the lots were scheduled to be resold at a later auction. The county attended the second auction, bid on the lots, and purchased the property for roughly one third of the bid at the first sale. *Id.* The county then petitioned the court to set aside the initial sale and uphold the second. *Id.* The trial court granted the county's petition, set aside the initial auction, and directed the sheriff to consummate the second sale. *Id.* The trial judge held: "The doctrine of caveat emptor does not go so far. The fault here was all on the side of the use plaintiff, and the bids of the County Commissioners were made in good faith. The resale was held to correct a confusion and misunderstanding, directly and possibly intentionally, caused by the use plaintiff. If the use plaintiff has suffered it was caused by her acts, and not the acts of the County Commissioners." *Id.* at 549-50.

The *Mount* plaintiff appealed the matter to the Superior Court. In upholding the trial court's order, the Superior Court noted that, "the courts have not been rigid in the application of the maxim of caveat emptor to judicial sales, but have always liberally interfered for the protection of an erring purchaser untainted by fraud." *Mount*, 1 A.2d at 550 (quoting *Crawford v. Boyer*, 14 Pa. 380, 383 (1850)). The Superior Court concluded that the county's representative was not only without authority to bid as high as he had, but also acted, "under a misapprehension of the facts, and that the plaintiff was responsible for the misapprehension and confusion which resulted." *Id.* The Superior Court denied the plaintiff's appeal, and affirmed the decision of the trial court as within the discretion afforded it. *Id.*

A final case relevant to this matter was cited by the junior lien holder, Countrywide. In its May 17, 2006, letter brief (Doc. 37), Countrywide asserted that Purchaser is ineligible to participate in or challenge the fund held by the Marshal because he was not a lien holder as of the date of the sale. In support of this proposition, Countrywide cited to *Community Federal Sav. & Loan Assn. v. Luckenbach*, 436 Pa. 472 (1970). Like the instant case, *Luckenbach* involved a challenge to the proceeds of a judicial sale by the purchasers. *Luckenbach*, 436 Pa. 472. In that case, the sheriff's sale of the subject real property garnered some amount in excess of the existing lien. The sheriff's schedule of distribution provided that the sum in excess of the lien, taxes and costs, go to the mortgagors. After the sale the mortgagor/husband moved from the property, but his estranged wife remained for some period of time. The mortgagor/wife deliberately damaged the home. *Id.* at 474. The purchasers filed exceptions to the distribution seeking to divert to themselves the proceeds needed to pay for the damages to the property. They sought to have the necessary funds deducted from the sum payable to the mortgagors. The *Luckenbach* plaintiffs, like Purchaser, sought a revision of the schedule of distribution, and did not ask that the sheriff's sale be invalided. The trial court sustained the exceptions and directed the sheriff to amend the schedule of distribution to deduct the amount of the damages from the fund payable to the mortgagors and award that amount to the purchasers. *Id.*

The Pennsylvania Supreme Court subsequently reversed the order of the trial court. The Supreme Court wrote that: "(u)nder Rule 3136, in order to participate in

the fund created by a sheriff's sale, it is necessary that creditors have a lien on the fund as of the date of the sale because, on the date of the sale, the title to the property passes to the purchaser. In the case at bar, as of the date of the sale, the [purchasers] not only did not have a lien on the fund but could not have had since the basis of their claim was for damage which did not occur until after the sale." *Luckenbach*, 436 Pa. at 475. Without any citations to precedent or the text of the Rules of Civil Procedure, the court concluded that the purchasers were precluded from invoking Pa.R.Civ.P. 3136. *Id.* The *Luckenbach* court also reversed the trial court on the basis that the purchasers' damages could not be taken from the funds to be paid to both mortgagors when only the mortgagor/wife was responsible for the damages. *Id.*

A comprehensive review of Pennsylvania precedent and the Pennsylvania Rules of Civil Procedure reveals that the courts of the Commonwealth are invested with significant equitable powers to upset judicial sales. The courts choose to wield the authority on a case by case basis. The courts have chosen not to disrupt an otherwise valid judicial sale on the basis of the buyer's unilateral mistake of law. *See Shaffer,* 672 A.2d 326 (sale upheld where junior mortgagee/buyer's challenge based upon its own unilateral mistake of well-settled law); *but see Rockefeller*, 333 Pa. at 559 (mortgages marked satisfied as a result of the parties' mutual mistake of law reinstated where equitable considerations supported such a decision). The courts have invalidated sales where the buyer is induced by the creditor's actions to bid in excess of the relevant debt. *See Mount*, 1 A.2d 550 (courts have "liberally

interfered for the protection of an erring purchaser untainted by fraud"). However, Pennsylvania's Supreme Court set an objective rule to govern challenges to the distribution of sale proceeds. Specifically, a purchaser who is not also a creditor at the time of the sale, cannot challenge the schedule of distribution. *See Luckenbach*, 436 Pa. at 475.[2]

### 3.  Purchaser's Exception Overruled

In his exception, Purchaser asks this court to modify the schedule of distribution prepared by the Marshal. Purchaser does not request that the sale itself be undone or the property be subjected to a second auction. Unfortunately, the remedy sought by Purchaser is specifically precluded by the Pennsylvania Supreme Court's holding in *Luckenbach*. As a buyer without any interest in the property on the date of the sale, Purchaser is without standing to file exceptions to the proposed distribution. *See Luckenbach,* 436 Pa. at 475 (purchaser who is not also a creditor

---

[2]

The *Luckenbach* court offered no precedential support for the rule. Additionally, precluding purchaser challenges seems to contradict the plain wording of both Pa.R.Civ.P. 3132, and Pa.R.Civ.P. 3136, the rules governing challenges to judicial sales and to the distribution of sale proceeds. Both rules state that "any party in interest" may petition the court to set aside the sale or to challenge the schedule of distribution. Absent *Luckenbach*, we would consider a purchaser a "party in interest" with regard to both the sale and distribution of proceeds. Moreover, the opinion could have crafted a narrower rule applying only to instances where the alleged misconduct affecting the distribution occurred after a valid judicial sale. As it is broadly written, the rule strips the courts of any power to alter the distribution of proceeds after a creditor has induced a third party buyer to purchase the property with negligent or fraudulent representations of value or title. The purchaser's sole recourse in those instances would be to move to vacate the sale altogether and hold a second auction. Nonetheless, we adhere to the rule set forth in *Luckenbach* as we must respect the Pennsylvania Supreme Court's pronouncements of state law.

17

as of date of sale cannot participate in distribution fund under Pa.R.Civ.P. 3136). Moreover, Purchaser's suggestion that we redirect to him the proceeds that would otherwise go to the junior lien holder contradicts longstanding Pennsylvania precedent. Pennsylvania courts will not employ remedies in equity to upset real property sales where, "an innocent third party will be injured if correction of the mistake be decreed . . .." *Rockefeller*, 333 Pa. at 559. In this instance, we cannot punish Countrywide for the misdeeds of MER. We will deny Purchaser's motion for reconsideration and let stand our order overruling Purchaser's exception to the schedule of distribution as Pennsylvania law precludes this court from ordering the relief requested.

Even if we were to interpret Pennsylvania case law as permitting equitable relief in this context, Purchaser's own testimony regarding the pre-sale conversations with MER support overruling Purchaser's exception. At the May 11, 2006, hearing, Purchaser testified that during his conversations with MER's counsel, the latter "indicated . . . that all costs, fees, liens, whatever was necessary to have a clean title would be included in the upset price." *See* Hearing Transcript at 37. He testified that he could not recall whether MER's attorney specifically stated that the upset price included the transfer tax. *Id.* at 35. Moreover, Purchaser acknowledged that the public notice published in the Pocono Record stated that all transfer taxes "shall be responsibility of the purchaser." *Id.* Finally, Purchaser conceded that he did not rely upon MER's attorney's representations when bidding on the property. *Id.* at 37. Given the above concessions, this court could not award

Purchaser an amount equal to the tax he feels that he has been forced to pay twice. This court appreciates that Purchaser testified honestly rather than falsely stating that he recalled a specific promise that the transfer tax was included in the upset price. It is unfortunate that Purchaser's candor should serve as a detriment to his claim. Nonetheless, the testimony evidences a lack of equitable considerations that would warrant an order upsetting the judicial sale. Even if the law of the Commonwealth permitted altering the schedule of distribution, the above facts would compel this court to overrule Purchaser's exception to the schedule of distribution.[3]

### III.  CONCLUSION

We will deny Purchaser's motion for reconsideration and overrule Purchaser's exception to the schedule of distribution prepared by the Marshal. As a buyer who was not also a creditor as of the date of the Marshal's sale, Purchaser is precluded from challenging the schedule of distribution. Accordingly, this court cannot award Purchaser the relief requested. An appropriate order follows.

---

[3] This court is neither without sympathy for Purchaser, nor lacking concern with MER's actions. A judgment creditor is free to bid any amount at a Marshal's sale. A creditor may not, however, engage in fraud or misrepresentation to ensure that the auction price exceeds the judgment with costs and fees. Equity will not permit a creditor to raise the shield of *caveat emptor* after it pads an upset price with fees and charges it knows, or should know, do not apply, in an effort to dupe a potential buyer to bid well in excess of the judgment. Had the instant buyer relied upon a specific promise by MER that the transfer tax would be included in the cost, and had he asked that the court vacate the sale rather than alter the schedule of distribution, we may have complied. In that instance, the Pennsylvania Rules of Civil Procedure and applicable case law would support entering an order vacating the sale, directing the U.S. Marshal Service to resell the property, awarding damages to the innocent buyer, and ordering MER to pay all cost associated with both sales.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., : : Plaintiff, : : v. : : JAMES ANASTASIO, : a/k/a JAMES P. ANASTASIO, : : Defendant. : | CIVIL ACTION NO. 3:CV-04-2691 (JUDGE KOSIK) |

## **ORDER**

AND NOW, this 16th day of June, 2006, IT IS HEREBY ORDERED THAT:

[1] the third party purchaser's motion for reconsideration (Doc. 21) is **denied**;

[2] the order dated February 3, 2006, (Doc. 18) overruling the third party purchaser's exception to schedule of distribution, will stand; and;

[3] the U.S. Marshal Service is directed to distribute the proceeds of the sale as set forth in the schedule of distribution (Doc. 12).

s/Edwin  M.  Kosik
United States District Judge